# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JAMES JOHNSON, | ) | |
| | ) | No. 15 C 9737 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Susan E. Cox |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of the U.S. Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Plaintiff James Johnson ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff disability insurance benefits or supplemental security income under Title II ("DIB") and Title XVI ("SSI") of the Social Security Act. The Court grants the Plaintiff's motion for summary judgment (Dkt. 17), and denies the Commissioner's motion for summary judgment (Dkt. 21). The Court reverses the Commissioner's decision and remands the case for further proceedings consistent with this opinion.

## STATEMENT

**I.   Procedural History**

Plaintiff filed dual DIB and SSI applications on March 26, 2013, alleging a disability onset date of March 8, 2013, due to bipolar disorder, post-traumatic stress disorder, post-acute withdrawal syndrome, depression, and potential drug use. (R. 219-22, 249.) His initial applications were denied on July 25, 2013, and again at the reconsideration stage on May 13, 2014. (R. 89-90, 121-22.) Plaintiff requested a hearing before an Administrative Law Judge

("ALJ") on July 18, 2014, and the hearing was scheduled on March 12, 2015. (R. 39-70, 149.) At the hearing, Plaintiff who was represented by counsel, appeared and testified. (R. 39-70.) A vocational expert ("VE") also appeared and offered testimony. (*Id.*) On March 31, 2015, the ALJ issued a written decision denying Plaintiff's applications for DIB and SSI benefits. (R. 19-33.) Plaintiff requested review of the ALJ's opinion, which was denied, making the ALJ's decision the final decision of the Commissioner. (R. at 2.) Plaintiff then filed this civil action pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

## II. Medical Evidence

### A. Treating Physician

The medical evidence of record indicates that Plaintiff reported being diagnosed with bipolar disorder in 2006, and was psychiatrically hospitalized as early as 2004. (R. 412.) On March 5, 2012, Plaintiff was examined by his treating psychiatrist, Pradeep Thapar, M.D. (R. 512-13.) Dr. Thapar diagnosed Plaintiff with bipolar 1 – most recent episode hypomanic, alcohol dependence, opioid dependence; assigned Plaintiff a Global Assessment of Functioning ("GAF") Score of 50;[1] and prescribed Plaintiff Neurontin, Abilify, Lunesta, Klonopin, and Adderall. (R. 512-13.) Plaintiff continued to follow-up with Dr. Thapar approximately every four weeks through January 6, 2015. (R. 477-563.) At each session, Dr. Thapar gave Plaintiff a diagnosis of bipolar disorder, most recent episode hypomanic, alcohol dependence and drug dependence, and assigned Plaintiff a GAF score of 50. (*Id.*) Dr. Thapar continued to prescribe

---

[1] The Global Assessment of Functioning ("GAF") is a system used to score the severity of psychiatric illness, http://www.ncbi.nlm.nih.gov/pmc/articles/PMC3036670/ (last visited on January 10, 2017). According to the American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV-TR) (4th Ed. Text Rev. 2000) at page 34, a GAF between 41 and 50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning. We note that the fifth edition of the DSM, published in 2013, has abandoned the GAF scale because of "its conceptual lack of clarity ... and questionable psychometrics in routine practice." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 16 (5th Ed. 2013). *See Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) (recognizing the discontinuation of use of the GAF scale after 2012).

psychotropic medications at each session, including Lamictal, Lithium Carbonate, Trazadone and Seroquel, adjusting the medications as needed. (*Id.*) At most sessions, Dr. Thapar noted no abnormalities on the mental status examinations. (*Id.*) However, Dr. Thapar indicated at several sessions that Plaintiff's manic symptoms and manic processes continued, (R. 487, 528, 544, 547), that Plaintiff experienced depressive symptoms, (R. 524, 548), or that psychotic processes continued. (R. 498.)

On January 27, 2014, Dr. Thapar opined that Plaintiff was "not able to work at this time due to his disability" and was "disabled from his work schedule and not able to perform his work duties at this time." (R. 477.) Similarly, Dr. Thapar concluded on April 29, 2014, that Plaintiff had "mild to moderate limitations," was "not able to return to work at this time," and was "not capable in social and occupational functioning, and daily stressful situations." (R. 540.) Finally, on January 6 2015, Dr. Thapar opined that Plaintiff was "totally disabled without consideration of any past or present drug and/ or alcohol use." (R. 563.)

**B.**     **Hospitalizations and Substance Abuse Treatment**

Plaintiff was hospitalized at the Palos Community Hospital for voluntary alcohol detoxification from January 29, 2013 to February 2, 2013. (R. 373.) While hospitalized, Harcharan Sandu, M.D. performed a psychiatric evaluation. (R. 378-79.) Dr. Sandu diagnosed Plaintiff with alcohol dependence and cocaine dependence by history, and assigned Plaintiff a GAF score of 40[2] at admission and a GAF score of 60[3] upon discharge. (R. 379.) Plaintiff returned to the emergency room at Palos Community Hospital on February 15, 2013 "requesting detox" and was prescribed Xanax for anxiety. (R. 356, 372.)

---

[2] A GAF between 31 and 40 indicates some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. DSM-IV-TR (4th Ed. Text Rev. 2000) at 34.
[3] A GAF between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. DSM-IV-TR (4th Ed. Text Rev. 2000) at 34.

From February 26, 2013 to March 4, 2013, Plaintiff was hospitalized at Advocate Christ Medical Center due to an exacerbation of depression, severe alcohol dependence and abuse, suicidality, and a longstanding history of bipolar disorder. (R. 466-67.) Plaintiff was diagnosed with bipolar disorder, most recent episode depressed and alcohol dependence, and was assigned a GAF score of 30[4] upon admittance and a GAF score of 65[5] at discharge by his treating psychiatrist, Dr. Thapar. (R. 466-67.)

Plaintiff received substance abuse treatment at Gateway Foundation from March 8, 2013 through April 15, 2013. (R. 409-410.) Plaintiff was diagnosed with alcohol dependence, opioid dependence, and bipolar disorder, and was assigned a GAF Score of 45 upon admittance and a GAF score of 60 at discharge. (R. 409, 414-15.) Plaintiff was referred to Christ Hospital for intensive outpatient treatment and for continued outpatient psychiatric care from Dr. Thapar. (R. 409-10.)

C.  **Agency Consultants**

On June 26, 2013, Plaintiff underwent a psychological evaluation by state agency psychologist, Jeffrey Karr, Ph.D., P.C. (R. 470-73.) Dr. Karr indicated that Plaintiff was dysphoric, somber, seemingly discouraged during the exam but exhibited no signs of gross psychopathology. (R. 471.) Dr. Karr diagnosed Plaintiff with bipolar disorder and a history of polysubstance abuse, and indicated that if substance-free, Plaintiff was capable of handling funds. (R. 472-73.)

---

[4] A GAF between 21 and 30 indicates that behavior is considerably influenced by delusions or hallucination or serious impairment in communication or judgement or inability to function in almost all areas. DSM-IV-TR (4th Ed. Text Rev. 2000) at 34.
[5] A GAF between 61 and 70 indicates some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships. DSM-IV-TR (4th Ed. Text Rev. 2000) at 34.

State agency psychologist, Lionel Hudspeth, Psy.D., completed a Psychiatric Review Technique on July 13, 2013. (R. 75-78.) Dr. Hudspeth indicated that Plaintiff suffered from affective disorders and substance addiction disorders with no restrictions of activities of daily living; mild difficulties in maintaining social functioning and maintaining concentration, persistence, or pace; and one to two repeated episodes of decompensation, each of extended duration. (R. 75-76.) Dr. Hudspeth concluded that Plaintiff suffered from a non-severe mental impairment. (R. 77.)

At the reconsideration level, state agency psychologist, David Gilliland, Psy.D., completed a Psychiatric Review Technique and a Mental Residual Functional Capacity ("MRFC") report on May 9, 2014. (R. 99-100, 102-04.) Dr. Gilliland reviewed medical evidence from Gateway Westside Treatment, Palos Community Hospital, Advocate Christ Medical Center, and treatment records from Dr. Thapar. (R. 101-102.) Dr. Gilliand indicated that "[g]reat weight [was] given toward Dr. Thapar's diagnosis and GAF score as he has a treatment history with [Plaintiff]." (R. 102.) Dr. Gilliland opined that the Plaintiff had a severe mental health impairment with no limitations in activities of daily living, moderate limitations in social functioning, concentration, persistence and pace, with one or two episodes of decompensation. (R. 98-99.) Dr. Gilliland concluded that the Plaintiff was mentally capable of performing short and simple tasks in a routine schedule with reasonable rest periods and limited interaction with general public and co-workers. (R. 104.)

## IV. The ALJ's Decision

The ALJ's opinion found, *inter alia*, that: 1) Plaintiff met the insured status requirements of the Social Security Act through December 31, 2017; 2) Plaintiff had not engaged in substantial gainful activity since March 8, 2013; 3) Plaintiff had the severe impairment of bipolar

5

disorder; 4) Plaintiff's impairment did not meet the severity requirements of the listing in 20 C.F.R. Part 404, Subpart P, Appendix 1; 5) Plaintiff had the residual functional capacity ("RFC") to perform the full range of work at all exertional levels but with non-exertional limitations restricting Plaintiff to simple tasks with relaxed or flexible rate production requirements in a shift and occasional interaction with the public, coworkers and supervisors; 6) Plaintiff could not perform any of his past relevant work; and 7) jobs existed in significant numbers in the national economy that Plaintiff could perform, given his age, education, work experience and RFC including laundry laborer, industrial sweeper cleaner, or sandwich maker (R. 22-33.) Given these findings, the ALJ concluded that Plaintiff was not disabled as defined in the Social Security Act. (R. 33.)

To support his RFC determination, the ALJ summarized Plaintiff's symptoms as reported by Plaintiff to various medical professionals and also as he described them at the hearing (R. 28-29.) The ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible" (R. 28.) The ALJ explained, "The overall record does not support [Plaintiff's] allegations of an inability to work." (R. 29.)

The ALJ also summarized the opinions of various doctors who examined Plaintiff or reviewed the medical record (R. 30-31). The ALJ accorded "great weight" to the opinion of state agency mental health consultant, Dr. Gilliland, finding it consistent with the medical record. (R. 31.) By contrast, the ALJ gave little weight to the opinion of state agency medical consultant, Dr. Hudspeth, stating, "Due to [Plaintiff]'s ongoing outpatient treatment with Dr. Thapar and his inpatient treatment, I do not find [Dr. Hudspeth]'s opinion well supported." (R. 31.) The ALJ

gave the opinion of treating psychiatrist, Dr. Thapar, no weight because "broad opinions of being disabled and unable to work are conclusions and an issue reserved for the Commissioner"; the medical opinion is not supported by Plaintiff's objective clinical mental status findings; the GAF scores are inconsistent with mental status findings; Dr. Thapar noted normal work performance in September 2014, and because Dr. Thapar's treatment record supported Plaintiff's improvement and stability on medications without side effects. (R. 30.)

## DISCUSSION

### I. Standard of Review

The ALJ's decision must be upheld if it follows the administrative procedure for determining whether the plaintiff is disabled as set forth in the Act, 20 C.F.R. §§ 404.1520(a) and 416.920(a), if it is supported by substantial evidence, and if it is free of legal error. 42 U.S.C. § 405(g). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Although we review the ALJ's decision deferentially, she must nevertheless build a "logical bridge" between the evidence and her conclusion. *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). A "minimal[ ] articulat[ion] of her justification" is enough. *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008).

### II. The ALJ Improperly Discounted the Treating Physician's Opinion

The "treating physician" rule requires that an ALJ give controlling weight to the medical opinion of a treating physician if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence. 20 C.F.R. § 404.1527(d)(2); *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). Otherwise, the ALJ must "offer good reasons for discounting" the opinion of a treating physician. *Campbell v.*

7

*Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (internal quotations omitted); *Scott*, 647 F.3d at 739. Even where a treater's opinion is not given controlling weight, an ALJ must still determine what value the assessment does merit. *Scott*, 647 F.3d at 740; *Campbell*, 627 F.3d at 308. In making that determination, the regulations require the ALJ to consider a variety of factors, including: (1) the nature and duration of the examining relationship; (2) the length and extent of the treatment relationship; (3) the extent to which medical evidence supports the opinion; (4) the degree to which the opinion is consistent with the entire record; (5) the physician's specialization if applicable; and (6) other factors which validate or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)-(d)(6); *Harris v. Astrue*, 646 F. Supp. 2d 979, 999 (N.D. Ill. 2009). An opinion is given controlling weight because "a treating physician has the advantage over other physicians whose reports might figure in a disability case because the treating physician has spent more time with the claimant." *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007).

Here, the ALJ improperly discounted the opinion of Dr. Thapar. It is undisputed that Dr. Thapar is Plaintiff's treating physician. The ALJ himself recognized "Dr. Thapar's ongoing psychiatric treating relationship with the claimant that started prior to his work stoppage and continued throughout the years." (R. 30.) However, the reasons the ALJ gave to reject Dr. Thapar's opinion were insufficient to completely deny weight to his medical opinion as a treating physician.

First, the ALJ "outright reject[ed]" the opinion of Dr. Thapar, asserting that "broad opinions of being disabled and unable to work are conclusions and an issue reserved for the Commissioner." (R. 30). While the ultimate issue of disability is a legal decision reserved for the Commissioner, the ALJ cannot disregard the medical evidence as a whole from the treating physician. *Scrogham v. Colvin,* 765 F.3d 685, 697 (7th Cir. 2014). It is true that the ALJ was

8

not bound by Dr. Thapar's conclusions that Plaintiff was not able to work and was totally disabled. (R. 477, 540, 563). *See Garcia v. Colvin*, 741 F. 3d 758, 760 (7th Cir. 2013) (The ALJ "was not bound" by plaintiff's physician's statement in a letter that plaintiff 'will be unable to return to any form of employment' because a physician may not be acquainted with the full range of jobs that a person [plaintiff's] ailments could fill"). Nonetheless, Plaintiff's physical and mental ability to work full time "is something to which medical testimony is relevant and if presented can't be ignored." (*Id.*) (citing *Bjornson v. Astrue*, 671, F.3d 640, 647-48 (7th Cir. 2012).[6]

Second, the ALJ erred when he concluded, "[D]ue to Dr. Thapar's treatment record supporting the [Plaintiff's] improvement and stability on medications without side effects, I am unable to give this treating source opinion any weight." (R. 30.) Although Plaintiff's condition had been relatively stable with treatment, there can be a great difference between "a patient who responds to treatment and one who is able to enter the workforce." *Scott*, 647 F.3d at 739. In order to reject Dr. Thapar's opinion based on Plaintiff's response to treatment, the ALJ must connect how his improvement restored Plaintiff's ability to work. *Murphy v. Colvin*, 759 F.3d 811, 818-19 (7th Cir. 2014) ("Simply because one is characterized as 'stable' or 'improving' does not mean that [one] is capable of [] work"); *Scott*, 647 F.3d at 740.

---

[6] If the ALJ thought it was possible there were jobs in the economy that Plaintiff could perform despite his bipolar diagnosis, he "should have asked [Dr. Thapar] to specify more exactly what 'functions' [Plaintiff] [was] incapable of performing," before rejecting Dr. Thapar's opinion as conclusory and according no weight for that reason. *Garcia v. Colvin*, 741 F. 3d 758, 760 (7th Cir. 2013). The Commissioner argued that the ALJ did not need to recontact Dr. Thapar because the regulations in effect at the time of *Garcia* were stricter than the revised regulations in effect at the time of the ALJ's decision in the instant case. (Dkt. 21 at 7-8.) The Commissioner asserted that the applicable, revised regulations give adjudicators more flexibility and only require an ALJ to recontact a medical source "if the evidence in the record is insufficient to determine whether the claimant is disabled." (*Id.*) (*citing* 20 C.F.R. §§ 404.1520b, 416.920b.). Here, the majority of the medical records regarding Plaintiff's bipolar disorder were from Dr. Thapar. Moreover, Dr. Gilliland, whom the ALJ gave "great weight" (R. 31), relied on the opinion and treatment notes of Dr. Thapar in making his determination. (R. 100-02.) Without considering the medical records of Dr. Thapar, the evidence of record would be "insufficient" to determine if Plaintiff was disabled. Accordingly, the Commissioner's argument has no traction.

Further, "[a] person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days." *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008). The ALJ must consider the entire record, including those portions of the record that do not support the ALJ's ultimate determination. *Scrogham,* 765 F.3d at 697. Particularly in mental illness cases, it is important for the ALJ to evaluate the entire record, as mental illness often fluctuates. *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011) ("[T]he ALJ's analysis reveals an all-too-common misunderstanding of mental illness. The very nature of bipolar disorder is that people with the disease experience fluctuations in their symptoms, so any single notation that a patient is feeling better or has a "good day" does not imply that the condition has been treated."); *see also Punzio,* 630 F.3d at 710-711. In summation, the ALJ failed to properly evaluate Plaintiff's treating physician's opinion, which requires reversal and remand.

**III. The ALJ Ignored Medical Evidence That Did Not Support the ALJ's Conclusion.**

While the ALJ did refer to medical records indicating Plaintiff's relative stability and improvement with treatment (R. 28-29), he did not address treatment notes showing otherwise. The ALJ asserted that "The objective examination evidence throughout the psychiatric treatment record does not support any ongoing negative clinical presentations except for his one presentation in December of 2013." (R. 28.) However, the ALJ did not account for treatment notes on May 24, 2014, where Dr. Thapar indicated that Plaintiff continued to describe signs and symptoms of a psychotic process; or on June 21, 2013, January 27, 2014, October 14, 2014 and November 11, 2014 where Dr. Thapar indicated that manic symptoms were present and manic processes continued. (R. 498, 528, 487, 547.)

Similarly, the ALJ erred when he noted, "This assessment of serious limitations . . . is also inconsistent with Dr. Thapar noting normal work performance in September of 2014." (R. 30.) While the ALJ was able to pinpoint one appointment where the Plaintiff reported "normal work performance" on September 16, 2014 (R. 30, 550), the ALJ failed to mention the progress note from Plaintiff's next appointment on October 14, 2014 where "angry feelings predominated the session;" feelings of anxiety and frustration were expressed; and symptoms of mania and manic process were present. (R. 547-48.) "An ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion." *Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) citing *Whitney v. Schweiker,* 695 F.2d 784, 788 (7th Cir. 1982); *Punzio v. Astrue*, 630 F.3d 704, 710 (2001) ("But by cherry-picking [the doctor]'s file to locate a single treatment note that purportedly undermines his overall assessment of [plaintiff]'s functional limitations, the ALJ demonstrated a fundamental, but regrettably all-too-common, misunderstanding of mental illness."). The ALJ committed reversible error by ignoring this contradictory evidence, and should take care to consider it on remand. [7]

## IV. On Remand, the ALJ Should Apply the New Policy Ruling On Credibility

Plaintiff also argues that the ALJ failed to make a proper credibility determination. The Court does not reach that issue, but notes that the Social Security Administration (the "Administration") has recently updated its guidance about evaluating symptoms in disability claims. *See* SSR 16-3p, 2016 WL 1119029 (effective March 28, 2016). The new ruling eliminates the term "credibility" from the Administration's sub-regulatory policies to "clarify that subjective symptom evaluation is not an examination of the individual's character." *Id.* at *1. On remand, the ALJ should re-evaluate Claimant's subjective symptoms in light of SSR 16-3p. Although the Court does not make a ruling on the issue of credibility at this time, there are

---

[7] Because the Court remands on this issue, it need not reach the other arguments posited by Plaintiff on appeal.

certain concerns that the Court would like the ALJ to address on remand. In particular, SSR 16-3p states that it is "not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms;" instead, "[t]he determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." On remand, the ALJ should take care to heed the requirements of SSR 16-3p.

## CONCLUSION

For the reasons discussed herein, the Court grants the Plaintiff's motion for summary judgment (Dkt. 17), and denies the Commissioner's motion for summary judgment (Dkt. 21.) The Court reverses the Commissioner's decision and remands the case for further proceedings consistent with this opinion.

**ENTER:**

**DATED: 1/19/2017**  _____

Susan E. Cox
United States Magistrate Judge